HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7              FOR THE WESTERN DISTRICT OF WASHINGTON

8   KEVIN ZWICKER and TERESA K. PALMER,          MDL No. 1896
    individually and on behalf of all others similarly
9   situated,                                    NO. C07-0291 JCC

10                  Plaintiffs,                   **PLAINTIFFS' MOTION FOR**
                                                 **FINAL APPROVAL OF CLASS**
11             v.                                **ACTION SETTLEMENT**

12  GENERAL MOTORS CORPORATION, a
    Delaware corporation,                        **Noted for Consideration:**
13                  Defendant.                    **November 6, 2008, 9:00 a.m.**

14  ───────────────────────────────────
    ROY FALK, LEE KRATZER and BARBARA
15  McRAE, on behalf of themselves and all       NO. C08-0031 JCC
    others similarly situated, and on behalf of the general
16  public,

17                  Plaintiffs,

18             v.

19  GENERAL MOTORS CORPORATION, a
    Delaware corporation,
20                  Defendant.

21  ───────────────────────────────────
    CHRIS CHRISTENSEN, TERRY M. KELLY,
22  and PEGGY KELLY, on behalf of themselves      NO. C08-0032 JCC
    and all others similarly situated,
23
                    Plaintiffs,
24
               v.
25  GENERAL MOTORS CORPORATION, a
    Delaware corporation,
26
                    Defendant.
27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 1
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

# I. INTRODUCTION

This motion seeks final approval of a nationwide settlement which provides substantial benefits for over four million owners of specific makes and models of Defendant General Motors Corporation ("GM") vehicles. The settlement provides owners of certain 2003, 2004 and 2005 model year GM vehicles with a replacement speedometer free of charge, including labor, if the vehicles experience a speedometer problem within the earlier of seven years or 70,000 miles. Those who experience a speedometer malfunction within seven years and between 70,000 and 80,000 miles, whichever comes first, will receive a free replacement speedometer. Moreover, those owners who previously paid to repair their speedometers within the 70,000 mile limit will be entitled to reimbursement of their parts and labor repair costs, while those owners who previously paid for a speedometer repair within the 80,000 mile limit will be entitled to reimbursement for the cost of the replacement parts.

This Court granted preliminary approval and provisional certification to the Class on March 4, 2008. GM subsequently has obtained the name and address information for Class Members and mailed the Court-approved notice to the Class. The period for filing objections and opting out expires on October 17, 2008. Accordingly, Plaintiffs now move the Court to grant final approval to the Settlement. Plaintiffs submit the Settlement is fair, reasonable and adequate, provides a substantial benefit to the Class, and meets all criteria for final approval under Ninth Circuit law.

# II. STATEMENT OF FACTS

## A.   Factual Background

In lawsuits filed in Washington, Oregon and California, Plaintiffs allege the following GM vehicles contain a flawed part — the stepper motor — that may cause premature speedometer failure: 2003, 2004, and 2005 (manufactured on or before December 31, 2004) model years Chevrolet Silverados, Avalanches, Suburbans and Tahoes; Cadillac Escalades; and GMC Sierras, Yukons and Yukon XLs (hereinafter collectively, "the GMT800 Series" or "the Trucks"). Plaintiffs contend that GM is liable for post-warranty failures of the defective

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 2
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1  speedometers.  Plaintiffs further allege that GM failed to disclose the Trucks contain

2  speedometers that may fail prematurely and that this failure poses a safety hazard because

3  vehicle owners with broken speedometers may be unknowingly driving faster than the speed

4  registered on the speedometer.  Plaintiffs in all three cases have experienced speedometer

5  failures.  Declaration of Kim D. Stephens in Support of Plaintiffs' Motion for Final Approval

6  of Class Action Settlement ("Stephens Decl.") ¶ 2.

7  **B.     Procedural History**

8          The procedural posture of each of the three existing cases is summarized below.  The

9  Court has conditionally approved a nationwide Class to include the named Plaintiffs in all three

10  cases:

11          1.      *Kevin Zwicker and Teresa K. Palmer et al. v. General Motors Corporation,*

12  Case No. C07-0291-JCC (W.D. Wash.).  Plaintiffs filed this case on February 23, 2007,

13  alleging breach of express and implied warranty, misrepresentation, unjust enrichment, and

14  violation of Washington's Consumer Protection Act (RCW 19.86.010).  GM moved to dismiss

15  the Complaint, claiming it had no liability for post-warranty failures.  On July 26, 2007, the

16  Court denied the motion, with the exception of dismissing Plaintiffs' unjust enrichment claim.

17  Stephens Decl. ¶ 3.

18          2.      *Roy Falk, Lee Kratzer and Barbara McRae et al. v. General Motors*

19  *Corporation,* Case No. C07-01731-WHA (N.D. Cal.).  Plaintiffs filed this case on March 27,

20  2007, alleging violations of the Consumers Legal Remedies Act (CLRA), Business and

21  Professions Code section 17200, fraud by omission, and unjust enrichment.  GM moved to

22  dismiss the Complaint.  On July 3, 2007, the Court denied the motion with the exception of

23  dismissing Plaintiffs' unjust enrichment claim.  The Court rejected GM's request to bifurcate

24  discovery between "class" and "merits" and set early deadlines.  Stephens Decl. ¶ 4.

25          3.      *Robert W. Christensen, Terry M. Kelly and Peggy Kelly et al. v. General Motors*

26  *Corporation,* Case No. CV07-0512-HA (D. Or.).  Plaintiffs filed this case on April 9, 2007.

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 3
4561/001/221352.2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1    The Court stayed this case pending ruling by the Judicial Panel on Multi-District Litigation

2    ("JPML") on GM's motion to consolidate the three actions and transfer them to Washington.

3    Stephens Decl. ¶ 5.

4          On January 8, 2008, the JPML issued an order consolidating the three pending cases

5    and transferring them to this Court.  Since that time, one more case has been added: *Rebecca*

6    *Connelly et al. v. General Motors Corporation*, Case No. 1:08-00483 (D. S.C.).  Stephens Decl.

7    ¶ 6.

8    **C.     Plaintiffs Thoroughly Investigated the Case**

9          Plaintiffs have thoroughly investigated this case, using both formal and informal

10   discovery methods.  Before filing, Plaintiffs did extensive research through use of public

11   records and the Internet to identify the scope of the speedometer failures, the affected vehicles,

12   and the costs of replacement.  Plaintiffs retained experts, interviewed mechanics in

13   speedometer shops, and otherwise vigorously investigated and discovered their claims.  *Id.* ¶ 7.

14         Discovery has shown that starting in 2003, consumers filed an unusually high number

15   of complaints regarding speedometer failures in GM's full-size GMT800 Series trucks and

16   SUVs.  These vehicles include the Chevrolet Silverado, Avalanche, Suburban and Tahoe; the

17   Cadillac Escalade; and the GMC Sierra, Yukon and Yukon XL ("GMT800 Series").[1]  They

18   contain an allegedly defective stepper motor, which can cause speedometer malfunctions.  *Id.*

19   ¶ 8.

20         Plaintiffs reviewed over 75,000 pages of imaged documents, plus 13 CD-ROMs

21   containing advertising produced by GM.  Plaintiffs deposed three corporate designees

22   regarding key aspects of GM's research and development and claims processes:  Mark

23   Schneider, Team Leader, WINS Warranty Claim Payment, GM, deposed on November 13,

24   2007; Robert Bordo, Engineering Group Manager, GM, and Brian Stouffer, Product

25

26   ---
     [1] This proposed Settlement Class does not include owners of vehicles other than those listed here.  Owners of
27   vehicles not included in the Settlement will not have their claims extinguished or compromised by this Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 4
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1   Investigator, GM, both deposed on November 14, 2007. *Id.* ¶ 10. The parties also held several

2   separate hours-long meet-and-confer sessions regarding GM's discovery responses during

3   August 2007. *Id.* ¶ 11. GM continued to produce documents on a "rolling" basis prior to

4   Settlement. Plaintiffs also commenced third-party discovery on two of GM's component

5   suppliers, Delphi and Innovative Sales & Marketing, Inc. *Id.* ¶ 12.

6        Beginning in March 2007, shortly after the filing of the *Zwicker* action, GM and the

7   National Highway Traffic Safety Administration ("NHTSA") had a series of discussions

8   concerning the rate of speedometer malfunctions in GMT800 Series vehicles, after which GM

9   agreed to initiate a Special Coverage Campaign for 2003 and 2004 GMT800 Series vehicles.

10  *Id.* ¶ 13. GM agreed that these lawsuits were a factor in its initiation of the Special Coverage

11  Campaign. *Id.* ¶ 14. Shortly before the Special Coverage Campaign notification was sent, GM

12  informed Plaintiffs' counsel that the campaign would be undertaken, and the parties agreed to

13  mediate this dispute. *Id.* ¶ 15.

14       Mediation took place on September 27 and October 12, 2007, facilitated by the

15  Honorable Edward A. Infante, a former U.S. Magistrate Judge for the Northern District of

16  California and an experienced mediator. *Id.* ¶ 16. On September 28, 2007, approximately six

17  months after Plaintiffs filed the above three actions, GM mailed notice to affected customers of

18  that "Special Coverage Campaign" extending the warranties on the instrument panel cluster,

19  which includes the speedometer. *Id.* ¶ 17. The Special Coverage Campaign extended the

20  warranties from the existing three years and 36,000 miles to seven years and 70,000 miles. *Id.*

21  ¶ 18.

22       The parties reached an agreement in principle on Class benefit at the second mediation

23  session. The benefits were enlarged beyond the Special Coverage Campaign with the addition

24  of 2005 model year GMT800 Series vehicles built before December 31, 2004. The vehicles

25  had a greater chance of containing a rotor which could cause the speedometer to malfunction

26  than those built after that date. *Id.* ¶ 19. The benefits were further enlarged by adding a "parts

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 5
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1    only" warranty on the instrument cluster for failures taking place between 70,000 and 80,000

2    miles. Most of the cost of a speedometer replacement is the instrument cluster cost, not the

3    labor. *Id.* ¶ 20.

4         After agreeing on these enlarged benefits, the parties then engaged in further

5    negotiations, with considerable assistance from Judge Infante, over attorneys' fees to Class

6    Counsel. *Id.* ¶ 21. The parties essentially concluded negotiations in late November 2007, but

7    spent the next three months documenting a formal Settlement Agreement, which was signed on

8    February 26, 2008. *Id.* ¶ 22.

9                    **III. THE PROPOSED SETTLEMENT**

10        The Settlement's details are contained in the Settlement Agreement signed by the

11   parties. *Id.*, Ex. 1. These are the Settlement Agreement's key terms:

12   **A.    The Settlement Class**

13        The proposed Settlement Class ("the Class") consists of all owners of 2003 and 2004

14   model years GMT800 Series vehicles, plus 2005 model year GMT800 Series vehicles built on

15   or before December 31, 2004. The Settlement Class consists of current owners of

16   approximately 3.8 million vehicles. The Class is defined as:

17              All current United States owners and lessees of Model Years
              2003–2005 General Motors GMT800 Platform automobiles
18            manufactured on or before December 31, 2004. The makes and
              models included in the GMT800 Platform, and owned by the
19            Settlement Class are Chevrolet - Avalanche, Silverado, Suburban,
              and Tahoe; GMC – Sierra, Yukon and Yukon XL; Cadillac –
20            Escalade, Escalade ESV, and Escalade EXT. Excluded is any
              person, firm, corporation, trust or other entity related to or
21            affiliated with Defendant General Motors and Defendant's legal
              representatives, assigns and successors. Also excluded is any
22            person who has or had an action for personal injury or death
              against General Motors as a result of an allegedly defective
23            instrument cluster, speedometer, or stepper motor in any of the
              subject Vehicles, the judge to whom this case is assigned and any
24            member of the judge's immediate family.

25   *Id.*, Exh. 1, ¶ 12.

26

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 6
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

**B.      The Special Coverage Campaign**

GM concedes that Plaintiffs' lawsuits were a factor that led GM to initiate a Special

Coverage Campaign, which provides Class Members a remedy for the defective part. *Id.* ¶ 14.

Under GM's Special Coverage Campaign, the Class Members owning 2003 and 2004 Trucks

will receive an enhanced warranty pertaining to the speedometers on the subject vehicles. *Id.*

¶¶ 13, 18; *see also id.*, Exh. 1 at Exh. A.. Also, Class Members who obtained speedometer

repairs prior to the Special Coverage Campaign are entitled to reimbursement up to the amount

GM would have paid a GM dealership to make the repairs. *Id.* ¶ 25.

As a result of the Special Coverage Campaign, approximately over three million Class

Members who own Trucks manufactured in 2003 and 2004 are entitled to free replacement

(including labor) of their broken speedometers for seven years or 70,000 miles, whichever

comes first. *Id.* ¶ 26. This benefit practically doubles GM's standard 3-year/36,000-mile

warranty normally applicable to the speedometers, at no cost to Class Members.

**C.      Additional Benefits Obtained Under the Class Settlement**

Although the Special Coverage Campaign covers the 2003 and 2004 model years, the

Settlement expands these benefits to model year 2005 GMT800 Series vehicles built on or

before December 31, 2004. The addition of the model year 2005 Trucks to the Special

Coverage Campaign and to this Settlement, provides replacement or reimbursement to

approximately 746,000 additional GM Truck owners. *Id.* ¶ 27. Plaintiffs' litigation and

proposed Settlement therefore creates substantial benefits for the Class as a whole, particularly

for those Class Members who will save, on average, roughly $500 in repair costs if their

speedometers need replacement. *Id.* ¶ 28.

**D.      Claims Administration**

As set forth in the Settlement Agreement, GM will act as the Claims Administrator.

Class Members may appeal an adverse determination by GM regarding their claim through the

dispute resolution processes available at the Better Business Bureau. GM will pay for the cost

of the dispute resolution process. *Id.* ¶ 29.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 7
4561/001/221352.2

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

### E.    Attorneys' Fees and Class Representatives' Stipend

GM has agreed to pay Plaintiffs' attorneys' fees and costs in the amount of $2.3 million. These fees will be paid in addition to monies set aside for the Class and will not affect reimbursements made to Class Members.  The requested stipends for Class representatives will also be paid out of this amount.  *Id.* ¶¶ 30, 31.

The Settlement Agreement provides for a $1,500 stipend for each person who served as a Class representative in the three cases.  These stipends recognize their service to and efforts on behalf of the Class.  These stipends are in addition to the relief the Class representatives will be entitled to under the terms of the Settlement and would be paid from any amount awarded as attorneys' fees.  *Id.* ¶ 31.

Throughout the litigation, the Class representatives accepted burdens that were not imposed on the rest of the Class.  Unlike unnamed Class Members, who will enjoy the benefits of the representatives' efforts without taking any personal action, the named Class representatives exposed themselves to GM's investigation, made themselves available as potential witnesses at deposition and trial, and subjected themselves to all the obligations of named parties.  A stipend for these named Class representatives is therefore appropriate. Incentive awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (courts routinely approve incentive awards to compensate named plaintiffs for services they provide); *see also Manual for Complex Litigation* (Fourth) § 21.62 n.971 (2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").  Such awards are common and range from several hundred dollars to many thousands of dollars, although most often they fall within the $1,000 to $3,000 range, as requested here.  *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003) (approving incentive award of $5,000 for each class representative); *Coca-Cola*, 200 F.R.D. at 694 (approving enhancement payments of $3,000 for each person who executed an affidavit, in

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 8
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1    recognition of contribution to litigation that entailed risk and effort); *see also* Sherrie R. Savett,

2    *Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and*

3    *Counsel Fees and Incentive Payments to Named Plaintiffs*, Prac. Law. Inst. pp. 340–345 (1996)

4    (compiling list of 52 cases with incentive awards to class representatives).

5    **F.      Notice and Response From the Class**

6         On March 4, 2008, this Court preliminarily approved the Settlement and provisionally

7    certified a Settlement Class. GM paid for the administration and distribution of notice to the

8    Class. Working with a vendor, Campbell-Ewald, GM obtained name and address data for

9    current registered owners and lessees of the Trucks through R.L. Polk & Co, a company that

10   collects registration information from departments of motor vehicles in each of the 50 states.

11   GM then paid to have the data run through the National Change of Address database to update

12   addresses and ensure the highest number possible of Class Members receive mailed notice.

13   Notice was then sent to each owner identified through this process via first class mail. In

14   addition, GM researched the names and addresses of any Class Members for whom notice was

15   returned as undeliverable after the initial mailing. *See generally* Declaration of Kathryn

16   Appleby ("Appleby Decl.").

17                          **IV.  THE SETTLEMENT APPROVAL PROCESS**

18        As a matter of "express public policy," federal courts strongly favor and encourage

19   settlements, particularly in class actions and other complex matters, where the inherent costs,

20   delays, and risks of continued litigation might otherwise overwhelm any potential benefit the

21   class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

22   1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex

23   class action litigation is concerned."); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg*

24   *on Class Actions* § 11.41 (4th ed. 2002) (gathering cases). As discussed below, the proposed

25   settlement constitutes the best vehicle for Class Members to receive the relief to which they are

26   entitled in a prompt, efficient manner.

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 9
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1    The class action settlement approval is a three-step process. *See Manual for Complex*

2  *Litig.* (Fourth) §§ 21.632–34 n.971 (2004). Here, two of the three steps have already been

3  completed. First, preliminary approval of the Settlement and provisional certification of the

4  Class took place on March 4, 2008. The second step involved the implementation of the notice

5  program approved by the Court. The third and final step is now before the Court — final

6  approval of the Settlement.

7  **A.    The Notice Program Provided Constitutionally Sound Notice to the Class**

8       1.    Notice Standards

9       To protect the rights of absent Class Members, the best notice practicable of a potential

10  settlement must be provided. *See* Fed. R. Civ. P. 23(e)(1); *Phillips Petroleum Co. v. Shutts*,

11  742 U.S. 797, 811–12 (1985); *Eisen & Carlisle v. Jacquelin*, 417 U.S. 156, 174–75 (1974);

12  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As the *Manual for*

13  *Complex Litig.* observes, "Rule 23 . . . requires that individual notice in [opt-out] actions be

14  given to class members who can be identified through reasonable efforts. Those who cannot be

15  readily identified must be given the 'best notice practicable under the circumstances.'" *Id.* at

16  § 21.311. "[D]ue process has not required actual notice to parties who cannot reasonably be

17  identified." *Id.* at n.882.

18       2.    The Notice Program Has Been Fully Implemented and Meets Applicable
          Standards

19
     Rule 23(e)(1) requires "direct notice" be provided "in a reasonable manner to all class

20  members who would be bound by the propos[ed settlement]." Here, GM obtained names and

21  addresses from the appropriate state agencies for all registered GMT800 Series vehicles for the

22  affected model years. Appleby Decl. ¶ 3. After updating those names and addresses with the

23  Post Office's change of address database, Campbell-Ewald, GM's vendor, arranged for the

24  mailing of class notice to 3,884,725 Class Members. *Id.* ¶¶ 3–4. Of these notices, 85,608 were

25  returned as undeliverable. *Id.* ¶ 5. For each of those returned as undeliverable, GM researched

26  the names and addresses and was able to re-mail notice packages to 9,223 of those Class

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 10
4561/001/221352.2

1  Members. *Id.* This data means that notice reached 98.1 % of the Class, even accounting for

2  those notices returned as undeliverable.

3  **B.     Final Approval of the Settlement is Appropriate**

4       When considering a motion for final approval, a court inquires into whether the

5  settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2); *City of Seattle*, 955 F.2d

6  at 1276.  A court may find a settlement to be fair, reasonable, and adequate when "the interests

7  of the class as a whole are better served if the litigation is resolved by the settlement rather than

8  pursued." *Manual for Complex Litig.* at § 30.42.  The decision to approve or reject a proposed

9  settlement is committed to the sound discretion of the trial court.  *See City of Seattle*, 955 F.2d

10  at 1276; *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985).

11       In affirming the settlement approved by the trial court in *City of Seattle*, the Ninth

12  Circuit noted it "need not reach any ultimate conclusions on the contested issues of fact and law

13  which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation

14  and avoidance of wasteful and expensive litigation that induce consensual settlements."

15  955 F.2d at 1291 (internal quotation and citation omitted).  The district court's ultimate

16  determination "will involve a balancing of several factors," which include:

17       1.     The strength of plaintiffs' case;

18       2.     The risk, expense, complexity, and likely duration of further litigation;

19       3.     The risk of maintaining class action status throughout the trial;

20       4.     The amount offered in settlement;

21       5.     The extent of discovery completed, and the stage of the proceedings;

22       6.     The experience and views of counsel; and

23       7.     The reaction of the class members to the proposed settlement.

24  *Id.* (quoting *Officers for Justice. v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

25

26

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 11
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1     1.    <u>The Settlement is Presumed to be Fair, Adequate, and Reasonable</u>

When parties to a litigation reach settlement through arm's-length negotiations by capable counsel with experience in complex class action litigation, then the settlement is presumed to be fair. *See M. Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987). This presumption applies here: Class Counsel have extensive experience in class action litigation, and they reached the settlement with GM through negotiation with an experienced mediator. Stephens Decl. ¶¶ 13–19, 41; *see also* Declaration of Michael F. Ram in Support of Motion for Final Approval of Class Action Settlement Agreement ("Ram Decl.") ¶¶ 2–4; Declaration of Karl Olson In Support of Motion for Final Approval of Class Action Settlement Agreement ("Olson Decl.") ¶¶ 2–4; Declaration of Gary E. Mason in Support of Motion for Final Approval of Class Action Settlement Agreement ("Mason Decl.") ¶¶ 2–4; and Declaration of Kevin L. Oufnac In Support of Motion for Final Approval of Class Action Settlement Agreement ("Oufnac Decl.") ¶¶2–3.

Settlement negotiations began in September 2007 and continued while litigation proceeded. On October 12, 2007, the parties reached an agreement in principle on Class benefits. Attorneys' fees and costs and Class representative stipends were then negotiated and agreement reached in November 2007. The Settlement Agreement itself was signed on February 26, 2008.

2.    <u>All of the Relevant Factors Support Final Approval</u>

*a.    Plaintiff Obtained Significant Relief for the Class*

The Settlement provides significant relief for Class Members whose Trucks have the allegedly defective stepper motor that may cause a premature speedometer failure. All eligible Settlement Class Members who experience a problem with their speedometers with less than 70,000 miles, or seven years in service, will receive a free replacement simply by bringing their vehicles in for repairs. Those Class Members who have paid out-of-pocket for speedometer repairs will be reimbursed up to the amount a customer would pay for repairs at a GM dealer. Those Class Members whose Trucks speedometers fail between 70,000 and 80,000 miles will

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 12
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1   get a free replacement part as long as their vehicles are less than seven years old, which the vast

2   majority are.

3         The Settlement provides a forward-looking enhanced warranty that covers all parts and

4   labor required for a GM-authorized technician to repair the allegedly defective part until the

5   Class Member's Truck has 70,000 miles or is seven years old.  The enhanced warranty differs

6   from GM's standard warranty, which only covers speedometer repairs for 36,000 miles or three

7   years, whichever comes first.  The Settlement also provides relief above and beyond that

8   offered by GM's Special Coverage Campaign (which was initiated after, and at least partially

9   in response to, this litigation) by adding owners of at least another 746,000 additional vehicles:

10  those who own 2005 model year GMT800 Series vehicles (manufactured on or before

11  December 31, 2004).  GM will also provide replacement parts for vehicles in the covered

12  model years which experience a speedometer problem while their vehicles have traveled more

13  than 70,000 but less than 80,000 miles.  In sum, for the vast majority of owners who experience

14  a speedometer malfunction or failure, this Settlement will provide them with repairs at no cost

15  (before seven years/70,000 miles) or very low cost (seven years/70,000 – 80,000 miles).

16         b.    *The Risks Inherent In Continued Litigation Support Final Approval*

17

18         Courts weigh the benefits of the settlement against the expense and delay involved in

19  achieving an equivalent or more favorable result at trial.  *See Young v. Katz*, 447 F.2d 431, 434

20  (5th Cir. 1971).  This Settlement serves the interest of the Class in prompt, efficient and

21  effective relief, bypassing the complexity, expense and lengthy duration of continued litigation.

22  *See City of Seattle*, 955 F.2d at 1291.

23         Here, Plaintiffs believe they have a strong case on the merits.  Their pre-filing and

24  continuing post-filing investigation indicated that the occurrence of defective speedometers are

25  not isolated incidents.  Discovery confirmed that the problems were widespread, and in some

26  respects revealed that the prevalence of failures was greater than suspected at the outset.

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 13
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1    Indeed, GM has agreed Plaintiffs' lawsuits were a factor in the decision to extend its warranty

2    coverage for the instrument cluster through the Special Coverage Campaign.

3         Nevertheless, Class Counsel also recognize the potential pitfalls lying on the path to a

4    favorable judgment. Perhaps the most significant relates to Plaintiffs' claim that GM knew the

5    instrument clusters were defective, yet failed to disclose this problem to consumers. As a result

6    of GM's alleged non-disclosure, many of the problems with the instrument cluster manifested

7    after the expiration of GM's new-vehicle limited warranty of three years or 36,000 miles.

8         If the Court or a jury were to find that GM did not fraudulently or negligently fail to

9    disclose this defect, then the majority of the Class claims could be in jeopardy. Over the past

10   couple of years, courts have held that product defects manifesting after the applicable warranty

11   period do not give rise to express-warranty or other claims. In *Clemens v. DaimlerChrysler*

12   *Corp.*, 534 F.3d 1017 (9th Cir. 2008), the head gasket in plaintiff's Dodge Neon automobile

13   failed after the express warranty expired. He then brought a putative class action, alleging the

14   head gaskets in Dodge Neons were prone to failure. In affirming the district court's dismissal[2]

15   of the consumer fraud claim, the Ninth Circuit stated that "where '[t]he only expectation buyers

16   could have had about [a particular] engine was that it would function properly for the length of

17   [the manufacturer's] express warranty,' the public was not likely to be deceived." *Id.* at 1026

18   (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838, 51 Cal. Rptr. 3d 118

19   (2006)) (changes in original).

20        Even if Plaintiffs navigated around this dangerous precedent, relief for the Class would

21   not be guaranteed. In *Avery v. State Farm Mutual Auto. Ins. Co.*, 216 Ill. 2d 100, 835 N.E.2d

22   801 (2005), *cert. denied*, 126 S. Ct. 1470 (2006), plaintiffs saw a $1 billion damages award

23   survive appellate review, only to be overturned in its entirety by a state supreme court. The

24   *Avery* plaintiffs filed their action in Illinois state court in 1997, alleging that in arranging for the

25

26   [2] Although, both the *Zwicker* and *Falk* plaintiffs managed to defeat GM's motions to dismiss. *See Falk v. GM*, 496 F. Supp. 2d 1008 (N.D. Cal. 2007); *Zwicker v. GM*, Slip Copy, 2007 WL 5309205 (W.D. Wash. July 26, 2007).

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 14
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1  repair of policyholders' vehicles, State Farm specified the use of cheaper, inferior parts

2  whenever possible. Plaintiffs obtained certification of a 48-state class, and the trial was held in

3  1999. Hundreds of exhibits were introduced, and dozens of witnesses testified. Plaintiffs'

4  breach of contract claim was tried to the jury, and their other claims were tried to the court.

5  The jury found for plaintiffs on their breach of contract claim, and the court found for plaintiffs

6  on their statutory consumer fraud claim. The court awarded plaintiffs $1,186,180,000 in

7  damages. State Farm appealed. In 2001, the appellate court reduced the award to

8  $1,056,180,000, but otherwise affirmed the judgment. State Farm sought review by the Illinois

9  supreme court. In 2005, the supreme court reversed the judgment of the appellate court on both

10 class certification and the merits. In 2006, the United States Supreme Court denied plaintiffs'

11 petition for certiorari.

12       Even if this Class were to ultimately prevail at trial, GM would inevitably appeal and

13 petition for review and the Class would have to wait a protracted period for relief. In the

14 meantime, the vehicles at issue would continue to be driven, potentially without the owner's

15 knowledge of his or her true speed as a result of the speedometer defect, and the vehicles would

16 continue to add on miles, exceeding the expanded coverage of the Settlement, and hence,

17 become unable to qualify for repair and replacement of defective speedometers. In contrast, the

18 proposed Settlement is designed to fix defective speedometers now, not in five years after trial

19 and appeal are over and the Class has shrunk to nothing.

20       It bears emphasis that Class Members will have their defective speedometers repaired

21 free of charge and, in some cases, they will be reimbursed for replacements that have already

22 taken place. By comparison, in other cases alleging significant automotive problems or defects,

23 courts have approved settlements providing only discount certificates applicable to the

24 purchase or lease of a new vehicle. Just earlier this year, such a settlement was approved by the

25 Superior Court of Sacramento County, California. In 2007, trial started in the *Ford Explorer*

26 *Cases*, Judicial Council Coordination Proceeding Nos. 4226 and 4270, which alleged that Ford

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 15
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1  Explorer sport-utility vehicles had a high rollover propensity. After 50 days of trial, plaintiffs

2  and Ford agreed to a class action settlement covering residents of California, Texas, Illinois,

3  and Connecticut. The settlement, which was granted final approval in April 2008, provided

4  claimants with certificates good for $500 off the purchase or lease of a new Ford Explorer, or

5  $300 off the purchase or lease of any other Ford, Lincoln, or Mercury vehicle. *See* Ford

6  Explorer settlement website, *available at* https://www.explorerclaims.com (visited Sept. 28,

7  2008).

8          In speaking to the press on the day of preliminary settlement approval, plaintiffs' lead

9  attorney in the *Ford Explorer Cases* said they settled for certificates because of Ford's

10  precarious financial condition. *See* Don Thompson, *Sacramento Judge Approves Ford*

11  *Explorer Four-State Settlement*, Associated Press (Dec. 3, 2007), available at http://www.

12  sfgate.com/cgi-bin/article.cgi?f=/n/a/2007/12/03/state/n161401S22. DTL&feed=rss.business

13  (visited Sept. 28, 2008). Counsel's comment points to yet another risk this Class would have to

14  bear in continued litigation. As with Ford, GM's financial condition is also troubled, as has

15  been widely reported in the media. At the time of negotiating the Settlement, GM faced

16  declining U.S. sales of 21.3 percent, and the possibility of closing plants because of striking

17  auto parts makers. At present, GM, according to one news report: "faces a crisis like no other

18  in its history." In the last 18 months, it lost $57.5 billion and has more than $32 billion in long

19  term debt. The poor economy has forced it to close factories and lay off workers. In July, GM

20  suspended its dividend. *See* Stephens Decl., Exhs. 2, 3, 4.

21          The Ninth Circuit has stated: "A settlement proposal need not provide the best or

22  speediest relief imaginable to be fair, adequate and reasonable." *Officers for Justice v. Civil*

23  *Svc. Comm'n of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982); *see also Hanlon v. Chrysler*

24  *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the

25  question we address is not whether the final product could be prettier, smarter or snazzier, but

26  whether it is fair, adequate and free from collusion.") Plaintiffs believe the present Settlement

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 16
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1    meets this standard with ease.  Accordingly, for the reasons stated above, Plaintiffs submit the

2    present Settlement meets this standard with ease.

3                    c.      *Discovery Supports Final Approval*

4           As discussed above, Plaintiffs thoroughly investigated this case through both formal and

5    informal discovery methods.  Plaintiffs' investigation began long before filing their complaints,

6    by reviewing public records, commissioning expert laboratories, and searching the Internet to

7    identify the scope of the speedometer failures, the affected vehicles, and the costs of

8    replacement, as well as conducting extensive interviews with affected consumers.

9           Formal discovery included written interrogatories and requests for documents,

10   subpoenas to third parties, review of over 75,000 pages of imaged documents, and 13 CD-

11   ROMs of advertising produced by GM.  Plaintiffs deposed three corporate designees regarding

12   key aspects of GM's research and development and claims processes.  Plaintiffs commissioned

13   expert laboratory testing of the defective part and interviewed speedometer shop mechanics.

14          Discovery has also shown that, as to the high mileage Trucks that are not covered by the

15   settlement (i.e., those with speedometers that have lasted more than 80,000 miles), the issue of

16   wear and tear of over 80,000 miles, and in some cases more than 100,000 miles, becomes a

17   competing factor that constitutes an alternative cause of speedometer failure.  Stephens Decl.

18   ¶ 9.  Given the causation issues faced by the owners of the high mileage vehicles that are not

19   covered (as gleaned from discovery in this case), Plaintiffs submit that the Settlement here is

20   fair and reasonable.  *Id.* ¶ 42; Ram Decl. ¶ 5; Olson Decl. ¶ 5; Mason Decl. ¶ 5; Oufnac Decl.

21   ¶ 4.

22                   d.      *Class Counsel Favor Final Approval*

23          "When experienced and skilled class counsel support a settlement, their views are given

24   great weight."  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  Class Counsel

25   here have extensive experience prosecuting class actions through both settlement and trial.

26   They support this Settlement as fair, reasonable and adequate, and in the best interests of the

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 17
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 ● FAX 206.682.2992

1   Class as a whole.  Stephens Decl. ¶¶ 43–44; Ram Decl. ¶¶ 2–5; Olson Decl. ¶¶ 2–5; Mason

2   Decl. ¶¶ 2–5; Oufnac Decl. ¶ 2–4.

3            e.       *Class Members' Positive Reaction Supports Final Approval*

4            Significantly, the Settlement has already received a positive response from the Class.

5   Whether class members react favorably to a proposed settlement is an important factor for the

6   court to consider when determining if the proposal is fair, reasonable, and adequate.  *City of*

7   *Seattle*, 955 F.2d at 1291; *Bryan v. Pittsburg Plate Glass Co.*, 494 F.2d 799, 802 (3d Cir.

8   1974).  When few class members object, a court may appropriately infer that a class action

9   settlement is fair, adequate, and reasonable.  *Chiaramonte v. Pitney Bowes, Inc.*, Slip Copy,

10  2008 WL 510765, *6 (S.D. Cal. Feb. 25, 2008); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact

11  that the overwhelming majority of the class willingly approved the offer and stayed in the class

12  presents at least some objective positive commentary as to it fairness.").  Indeed, a court may

13  approve a class action settlement as fair, adequate, and reasonable even over the objections of a

14  significant percentage of class members.  *See City of Seattle*, 955 F.2d at 1291–96; *Bryan*,

15  494 F.2d at 803 ("While the proportion of the class opposed to a settlement is often one factor

16  to be considered in assessing its fairness, . . . a settlement is not unfair or unreasonable simply

17  because a large number of class members oppose it.").

18           Here, only fifteen objections have been received.  The percentage of Class Members

19  who have submitted negative comments is extremely low, less than .01 percent of the Class.

20  Furthermore, none of the views expressed furnishes any basis to withhold settlement approval.

21  For instance, some objectors believe this action should never have been brought because the

22  warranty covered only three years or 36,000 miles.  In contrast, other objectors contend the

23  Settlement should cover all vehicles regardless of mileage traveled.  Stephens Decl. ¶¶ 37–38.

24  As explained above, this Settlement will capture the majority of Trucks with defective parts

25  and reimburse a great number of Class Members for their out-of-pocket expenses in fixing the

26

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 18
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1   problem, while eliminating the substantial risks associated with continued litigation and trial.

2   *Id.* ¶ 39.

3   In their reply papers, to be filed after the expiration of the comment deadline, Plaintiffs

4   will address all objections received in greater detail.  If the reaction of the Class to date is any

5   indication, however, Plaintiffs expect the fraction of objectors will remain low, reflecting

6   overwhelming support for the Settlement.  *Id.* ¶ 40.

7                 f.      *The Presence of Good Faith and the Absence of Collusion Favors*
                          *Final Approval*
8
        Courts often also consider the presence of good faith and the absence of collusion
9
    between the settling parties when analyzing whether to grant final approval to a settlement.
10
    4 *Newberg on Class Actions* § 11.43.  No collusion or bad faith exists here, nor have any
11
    allegations been raised regarding such behavior.  Courts recognize that when an agreement has
12
    been reached through arm's-length negotiations by competent counsel, a *prima facie* case of
13
    fairness attaches.  As the Supreme Court has held, "[o]ne may take a settlement amount as good
14
    evidence of the maximum available if one can assume that parties of equal knowledge and
15
    negotiating skill agreed upon the figure through arm's-length bargaining . . . ."  *Ortiz v.*
16
    *Fibreboard Corp.*, 527 U.S. 815, 852 (1999).
17
        The proposed Settlement here resulted from arm's-length negotiations between
18
    experienced counsel with the aid of an experienced neutral mediator, all of whom have
19
    significant class action experience in general, and with the legal and factual issues presented in
20
    this case in particular.  Only after class-wide issues were settled did the parties negotiate
21
    attorneys' fees and costs.
22
**C.**     **It Is Appropriate for the Court to Enter a Final Order Approving the**
23          **Settlement on Behalf of the Class**

24      At the preliminary approval hearing, the Court provisionally certified a Settlement Class

25  as follows:

26          All current United States owners and lessees of Model Years
            2003–2005 General Motors GMT800 Platform automobiles
27

---

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 19
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 ● FAX 206.682.2992

1  manufactured on or before December 31, 2004.  The makes and
   models included in the GMT800 Platform, and owned by the
2  Settlement Class are Chevrolet - Avalanche, Silverado, Suburban,
   and Tahoe; GMC - Sierra, Yukon and Yukon XL; Cadillac -
3  Escalade, Escalade ESV, and Escalade EXT.  Excluded is any
   person, firm, corporation, trust or other entity related to or
4  affiliated with Defendant General Motors and Defendant's legal
   representatives, assigns and successors.  Also excluded is any
5  person who has or had an action for personal injury or death
   against General Motors as a result of an allegedly defective
6  instrument cluster, speedometer, or stepper motor in any of the
   subject Vehicles, the judge to whom this case is assigned and any
7  member of the judge's immediate family.

8  *See* Preliminary Order Approving Settlement, Directing Issuance of Class Notice, and

9  Scheduling Fairness Hearing dated March 4, 2008.  All required criteria for Class certification

10 remain satisfied.  For the sake of brevity, Class Counsel respectfully refer the Court to the

11 discussion of Class certification at pages 12–18 of Plaintiffs' Memorandum in Support of

12 Preliminary Approval of Settlement Agreement dated February 28, 2008.  Plaintiffs

13 respectfully move the Court to approve the Class certification and enter a final order approving

14 the Settlement on behalf of the certified Class.

                              **V. CONCLUSION**

15
16      For the foregoing reasons, Plaintiffs respectfully move the Court to grant final approval

17 to the Class certification and approve the proposed Settlement as fair, reasonable, and adequate

18 pursuant to Fed. R. Civ. P. 23.

19      DATED this 9th day of October, 2008.

20                          TOUSLEY BRAIN STEPHENS PLLC

21      By: /s/ Kim D. Stephens, WSBA #11984
           Kim D. Stephens, WSBA #11984
22         kstephens@tousley.com
           Mary B. Reiten, WSBA #33623
23         mreiten@tousley.com
           1700 Seventh Avenue, Suite 2200
24         Seattle, Washington  98101-4416
           Telephone:  206.682.5600
25         Facsimile:  206.682.2992

26
27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 20
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Gary E. Mason, Admitted *Pro Hac Vice*
gmason@masonlawdc.com
THE MASON LAW FIRM, LLP
1225 19th Street NW, Suite 500
Washington, D.C.  20036
Telephone:  202.429.2290
Facsimile:  202.429.2294

Kevin L. Oufnac, Admitted *Pro Hac Vice*
kevin.oufnac@kgscounsel.com
KAHN GAUTHIER SWICK LLC
650 Poydras Street, Suite 2150
New Orleans, Louisiana  70130
Telephone:  504.455.1400
Facsimile:  504.455.1498

Michael F. Ram, Admitted *Pro Hac Vice*
mfr@lrolaw.com
Karl Olson, Admitted *Pro Hac Vice*
ko@lrolaw.com
LEVY, RAM & OLSON
639 Front Street, Fourth Floor
San Francisco, California  94111
Telephone:  415.433.4949
Facsimile:  415.433.7311

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 21
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey R. Johnson, WSBA #11082
jjohnson@wkg.com
John A. Knox, WSBA #12707
jknox@wkg.com
WILLIAMS, KASTNER & GIBBS PLLC
P.O. Box 21926
Seattle, Washington  98101
Telephone:  206.628.6600
Facsimile:  206.628.6611

Micki S. Singer
micki.singer@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One Market Plaza, Steuart Tower, 8th Floor
San Francisco, California  94105
Telephone:  415.781.7900
Facsimile:  415.781.2635

Amand K. Mines
amand.mines@sdma.com
Jacqueline M. Jauregui
jacqueline.jauregui@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
801 South Figueroa Street, 19th Floor
Los Angeles, California  90017
Telephone:  213.426.6900
Facsimile:  213.426.6921

E. Paul Cauley, Jr.
Email:  paul.cauley@sdma.com
SEDGWICK, DETERT, MORAN & ARNOLD LLP
1717 Main Street, Suite 5400
Dallas, Texas  75201-7367
Telephone:  469.227.8200
Facsimile:  469.227.8004

*Attorneys for Defendant*

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 22
4561/001/221352.2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101-4416
TEL. 206.682.5600 • FAX 206.682.2992

1    DATED at Seattle, Washington, this 9th day of October, 2008.

2

3                                By: /s/ Kim D. Stephens, WSBA #11984
                                     Kim D. Stephens, WSBA #11984
4                                    kstephens@tousley.com
                                     Attorney for Plaintiffs
5                                    TOUSLEY BRAIN STEPHENS PLLC
                                     1700 Seventh Avenue, Suite 2200
6                                    Seattle, Washington  98101
                                     TEL:    206.682.5600
7                                    FAX:    206.682.2992

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT [MDL No. 1896] - 23
4561/001/221352.2